IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| MICHAEL HARDY,<br><br>        Plaintiff,<br><br>v.<br><br>OFFICER ROBERT MCGAHA and CITY OF NAPLES, UTAH,<br><br>        Defendants. | **MEMORANDUM DECISION AND ORDER ADOPTING REPORT AND RECOMMENDATION AND DISMISSING CASE**<br><br>Case No. 2:25-cv-00203-TC-DBP<br><br>Judge Tena Campbell<br>Magistrate Judge Dustin B. Pead |

In this civil rights action, Plaintiff Michael Hardy brings claims under 42 U.S.C. § 1983 against Defendants Officer Robert McGaha and the City of Naples, Utah (City of Naples) for violations of his rights under the Fourth and Fourteenth Amendments. (See Compl., ECF No. 1.) Specifically, Mr. Hardy asserts that 1) Officer McGaha unreasonably seized Mr. Hardy's car in violation of the Fourth Amendment when Officer McGaha had that car towed without a warrant after learning that Mr. Hardy did not have a valid registration (id. ¶¶ 12–13, 19–21); 2) the Defendants violated Mr. Hardy's right to due process under the Fourteenth Amendment by failing to provide Mr. Hardy a pre-deprivation hearing before towing his car or providing for a prompt post-deprivation hearing (id. ¶¶ 14, 25–27); and 3) the City of Naples is liable for these violations under a theory of municipal liability due to its policies and practices and a failure to train its officers (id. ¶¶ 15, 23, 28).

1

On June 27, 2025, United States Magistrate Judge Dustin B. Pead issued a Report and Recommendation (R&R) recommending that the court grant the Defendants' motion to dismiss (ECF No. 19) and dismiss this action without prejudice for failure to state a claim. (R&R, ECF No. 28 at 12–13.) Judge Pead found that 1) Officer McGaha did not violate the Fourth Amendment by towing Mr. Hardy's unregistered vehicle (id. at 7–8); 2) there are no pre-deprivation hearing requirements for unregistered vehicles (id. at 9–10); and 3) Mr. Hardy failed to state a claim for municipal liability (id. at 10–12).

Mr. Hardy then timely filed objections to the R&R. (Pl.'s Objs., ECF No. 29.) He also filed a motion asking the court to reconsider its order denying Mr. Hardy's motion for entry of default against the Defendants. (Pl.'s Mot. Reconsider, ECF No. 30; Order Denying Mot. Entry Default, ECF No. 21.)

For the following reasons, the court overrules Mr. Hardy's objections and adopts Judge Pead's R&R. The court also denies Mr. Hardy's motion to reconsider.

## BACKGROUND

The facts alleged in the Complaint are summarized in Judge Pead's R&R. (ECF No. 28 at 3–5.) In brief, the lawsuit arises out of two separate incidents. The first occurred around 8:30pm on February 5, 2025, when Officer McGaha stopped Mr. Hardy near his home and had Mr. Hardy's car towed after learning that Mr. Hardy did not have a valid registration. (Compl. ¶¶ 10–14.) Mr. Hardy admits that his car was not registered, as Mr. Hardy "does not hold a contractual agreement with the State of Utah for the Automobile's registration, believing that no lawful grounds exist for its forced registration absent valid constitutional compulsion." (Id. ¶ 11.)

A similar incident occurred several weeks later, on March 30, 2025, in which Officer McGaha stopped Mr. Hardy and impounded Mr. Hardy's new vehicle.[1] (Pl.'s Opp'n Mot. Dismiss, ECF No. 22 at 2; Pl.'s Suppl. Obj., ECF No. 38 at 1.)

## LEGAL STANDARD

Under 28 U.S.C. § 636(b)(1)(C), after receiving a report and recommendations from a magistrate judge on a dispositive motion,

> [a] judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.

See also Fed. R. Civ. P. 72(b)(3) ("The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to."). The court therefore reviews Judge Pead's R&R de novo to the extent that Mr. Hardy objects to his findings and recommendations.

## ANALYSIS

Mr. Hardy makes four objections to Judge Pead's R&R. First, he reiterates the claim in his Complaint that Officer McGaha violated the Fourth Amendment by seizing Mr. Hardy's car. Second, he argues that he never received notice of a post-deprivation hearing. Third, he maintains that he properly alleged the existence of specific policies that render the City of Naples

---

[1] Mr. Hardy does not describe the second stop in his complaint. Instead, he includes these facts in his opposition to the Defendants' Motion to Dismiss and in a supplemental objection to Judge Pead's R&R. (ECF Nos. 22 & 38.) The Defendants have not had an adequate opportunity to respond to these additional allegations, but the court has considered them due to Mr. Hardy's pro se status. See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (instructing courts to construe pro se pleadings "liberally" and hold pro se filings "to a less stringent standard than formal pleadings drafted by lawyers"). The additional incident does not alter the court's analysis because the court finds that Mr. Hardy has not alleged any constitutional violations.

liable in this matter. And fourth, he objects to any application of the doctrine of qualified immunity in this matter.

Before the court turns to these specific objections, the court first addresses Mr. Hardy's motion asking the court to reconsider its previous order denying the entry of default against the Defendants.

**I.      Motion to Reconsider**

On June 2, 2025, Mr. Hardy moved the court to enter default against the Defendants for their failure to answer the Complaint by that date. (ECF No. 17.) Mr. Hardy also moved the court to enter default judgment against the Defendants in the amount of $60,000. (ECF No. 18.) On that same day, the Defendants filed their motion to dismiss. (ECF No. 19.) The Clerk of Court then denied Mr. Hardy's motion to enter default, finding that the "Defendants have appeared and opposed entry of default." (ECF No. 21 at 1.) Judge Pead later denied Mr. Hardy's motion for default judgment, finding that the Defendant filed their motion to dismiss within the allowed 60-day time period. (Mot. Denying Mot. Default J., ECF No. 27 at 2.)

Mr. Hardy now moves the court to reconsider its order denying the entry of default against the Defendants. Mr. Hardy argues that the Defendants executed waivers of service under Rule 4(d) of the Federal Rules of Civil Procedure on April 1, 2025, and that the Defendants were therefore required to answer or otherwise respond to the Complaint within 60 days, or by May 31, 2025. (ECF No. 30 at 1.)

The court agrees with Mr. Hardy that the Defendants executed a waiver of service on April 1, 2025 (see Waiver of Service, ECF No. 8), and that the Federal Rules of Civil Procedure allowed the Defendants 60 days from that date to file an answer or otherwise respond. See Fed. R. Civ. P. 4(d)(3). But Mr. Hardy is incorrect that the Defendants' response was due on

4

May 31, 2025, because Mr. Hardy neglects to apply Rule 6 of the Federal Rules of Civil Procedure.

Under Rule 6, a period stated in days (such as a 60-day period) shall "include the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday." Fed. R. Civ. P. 6(a)(1)(C). Because May 31, 2025, fell on a Saturday, Rule 6 allowed the Defendants until the end of the day on Monday, June 2, 2025, to file their response. And because the Defendants filed their motion to dismiss on June 2, 2025, their response was timely. It is therefore not appropriate to enter default against the Defendants, and the court denies Mr. Hardy's motion to reconsider.

In any event, the Tenth Circuit has cautioned that "every effort should be made to try cases on the merits" rather than to issue a default judgment for failure to answer. Greenwood Explorations, Ltd. v. Merit Gas & Oil Corp., Inc., 837 F.2d 423, 426 (10th Cir. 1998). And even if the court were to enter default against these Defendants, that default does not automatically justify a default judgment. A trial court has broad discretion in deciding whether to enter a default judgment. Galloway v. Hadl, No. 07-3016-KHV, 2008 WL 5109758, at *1 (D. Kan. Dec. 2, 2008) (citing Grandbouche v. Clancy, 825 F.2d 1463, 1468 (10th Cir. 1987)). Furthermore, a plaintiff must establish that the amount of requested damages is reasonable under the circumstances. DeMarsh v. Tornado Innovations, L.P., No. 08-2588-JWL, 2009 WL 3720180, at *2 (D. Kan. Nov. 4, 2009) (citation omitted). "Damages may be awarded only if the record adequately reflects the basis for [the] award via 'a hearing or a demonstration by detailed affidavits establishing the necessary facts.'" Id. (quoting Adolph Coors Co. v. Movement Against Racism & the Klan, 777 F.2d 1538, 1544 (11th Cir. 1985)).

5

Here, for the reasons stated below, the court finds that Mr. Hardy has failed to establish that he is legally entitled to damages from these Defendants.

## II.     Fourth Amendment

Mr. Hardy asserts that the "seizure of Plaintiff's vehicle without a warrant or exigent circumstances constitutes a clear violation of the Fourth Amendment." (ECF No. 29 at 1.) But Mr. Hardy does not dispute that Utah law allows for the warrantless seizure of "any vehicle … that is being operated on a highway: (i) with registration that has been expired for more than three months; (ii) having never been properly registered by the current owner; or (iii) with registration that is suspended or revoked[.]" Utah Code Ann. § 41-1a-1101(2)(f). Instead, Mr. Hardy claims that "[a]ny state law authorizing such a stop and seizure that violates constitutionally protected civil rights is void ab initio." (ECF No. 29 at 1.)

The court disagrees. Mr. Hardy cites no authority suggesting that Utah's registration law violates constitutionally protected rights. To the contrary, the Supreme Court has long held that "a state may rightfully prescribe uniform regulations necessary for public safety and order in respect to the operation upon its highways of all motor vehicles, those moving in interstate commerce as well as others. And to this end it may require the registration of such vehicles and the licensing of their drivers …." Hendrick v. Maryland, 235 U.S. 610, 622 (1915). Indeed, the Supreme Court has characterized registration as a "universal practice":

> The use of the public highways by motor vehicles, with its consequent dangers, renders the reasonableness and necessity of regulation apparent. The universal practice is to register ownership of automobiles and to license their drivers. Any appropriate means adopted by the states to insure [sic] competence and care on the part of its licensees and to protect others using the highway is consonant with due process.

Reitz v. Mealey, 314 U.S. 33, 36 (1941), overruled in part on other grounds by Perez v. Campbell, 402 U.S. 637 (1971).

The Tenth Circuit has upheld the impoundment of motor vehicles as part of law enforcement's legitimate community caretaking function based in part on the lack of registration. See, e.g., United States v. Haro-Salcedo, 107 F.3d 769, 771 (10th Cir. 1997) (upholding vehicle impoundment and noting that neither driver nor passenger "could prove ownership of the vehicle nor provide proof of registration"); United States v. Hunnicutt, 135 F.3d 1345, 1349–51 (10th Cir. 1998) (holding that impoundment was proper in part because the driver was not the registered owner).

Indeed, the Tenth Circuit has specifically considered Utah's registration law and found that "impoundment was reasonable under the Fourth Amendment" where an out-of-state driver lacked proper registration. United States v. Rios, 88 F.3d 867, 872 (10th Cir. 1996). Specifically, the Tenth Circuit held that "[b]ecause there was no valid out-of-state registration for the [car], the vehicle did not fall within the exemption of Utah Code Ann. § 41-1a-202(2)(a)" and was therefore "required to be properly registered according to Utah vehicle registration law." Id. And because the car was "improperly registered under Utah law, [the police officer] was authorized … to 'seize and take possession of' it." Id. (citing Utah Code Ann. § 41-1a-1101(1)(a), now codified at §41-1a-1101(2)). Unlike the driver in Rios, Mr. Hardy is a resident of Utah "domiciled in or near Naples, Utah." (Compl. ¶ 7.) There is no evidence (nor Mr. Hardy does allege) that the car has a valid out-of-state registration or is otherwise exempt from registration under Utah law.[2] It is therefore even clearer that Mr. Hardy's failure to maintain

---

[2] Absent an exemption, "a person … may not operate … a motor vehicle … unless it has been registered in accordance with this chapter[.]" Utah Code Ann. § 41-1a-201(1); see also id. § 41-1a-202(2)(a) (listing vehicles that are exempt from registration requirements). Mr. Hardy does not suggest that he meets the requirements of any exemption—he merely argues that he need not comply with any registration laws—and the court finds that none of the listed exemptions is applicable.

7

proper registration is in violation of Utah Code Ann. § 41-1a-201(1) and that Officer McGaha was authorized to seize Mr. Hardy's car under Utah Code Ann. § 41-1a-1101(2)(f).

Mr. Hardy nevertheless asserts that the initial stop violated his Fourth Amendment rights because Officer McGaha pulled him over "without running the plates or performing any records check at the time of the stop." (ECF No. 38 at 1.) Mr. Hardy suggests that he later learned during a hearing in traffic court that Officer McGaha was relying on information obtained a week earlier when he ran Mr. Hardy's name for an unrelated incident. (Id.)

The court agrees that a traffic stop is a seizure under the Fourth Amendment and must be objectively reasonable to avoid a constitutional violation. Delaware v. Prouse, 440 U.S. 648, 653–54 (1979). But a traffic stop is valid at its inception "if the stop is based on an observed traffic violation or if the police officer has reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring." United States v. Botero-Ospina, 71 F.3d 783, 787 (10th Cir. 1995) (en banc).[3]

Police officers are not required to obtain up-to-date information before initiating a traffic stop where an officer has recently become aware that someone is driving without a license, insurance, or registration. In United States v. Cortez-Galaviz, the Tenth Circuit held that a traffic stop did not violate the Fourth Amendment where an officer relied on information suggesting that a driver may not have had insurance even though that information was 20 days out of date. 495 F.3d 1203, 1211 (10th Cir. 2007). The Tenth Circuit found no "evidence or argument to suggest that reliance on a 20 day old alert is in any way or wise unreasonable given the nature of

---

[3] The court noted that this standard did not address an officer performing a community caretaking function, which is arguably the case here. Botero-Ospina, 71 F.3d at 787 n.4. But even assuming the general Fourth Amendment standard applies, the court finds that Officer McGaha had a reasonable articulable suspicion to stop Mr. Hardy under the facts pled.

available technology, the offense or detention at issue, or the practical challenges associated with coordinating the dissemination of registration and insurance information for every motor vehicle on the road." Id. at 1209. The court also cited favorably a decision from the Sixth Circuit holding that three-week-old information about the status of a driver's license was "sufficiently current to provide reasonable suspicion regarding the commission of the offense of driving with a suspended license." Id. at 1209–10 (citing United States v. Sandridge, 385 F.3d 1032, 1036 (6th Cir. 2004)). There are, of course, outer bounds to the timeliness of this type of information. See, e.g., State v. Correa, 549 P.3d 679, 685 (Utah Ct. App. 2024) (finding no reasonable suspicion of ongoing unlawful conduct where a driver was cited for driving without a license two months earlier). But here, Mr. Hardy asserts that Officer McGaha relied on information that was only a week old. Any information suggesting that Mr. Hardy was driving without a license or registration was sufficient to provide Officer McGaha with reasonable suspicion that Mr. Hardy was continuing to drive without a license or registration a week later.

Moreover, Mr. Hardy states in his Complaint that he chooses not to maintain an up-to-date registration for his car, believing that "no lawful grounds exist for its forced registration absent valid constitutional compulsion." (Compl. ¶ 11.) Mr. Hardy's belief is incorrect, as the court has explained above, but his continued insistence on this point suggests a likelihood that he is driving unlawfully whenever an officer sees him on the road. To the extent that Officer McGaha was aware of Mr. Hardy's belief, it is reasonable that Officer McGaha pulled him over to check his registration status.

Indeed, given Mr. Hardy's admission that he canceled his registration, it is implausible that Mr. Hardy maintained a valid registration sticker on his license plate. Although at this stage of the litigation the court has not received or considered any testimony from Officer McGaha

9

providing his description of the traffic stop, the court notes that the Tenth Circuit has upheld brief stops to check registration information where a driver's registration status was in question because it was dark or the license plate was obscured. See, e.g., United States v. Lyons, 510 F.3d 1225 (10th Cir. 2007) (permitting a traffic stop to check registration status where the license plate was dirty); United States v. McSwain, 29 F.3d 558 (10th Cir. 1994) (upholding an initial stop where the officer was unable to read the expiration date on a temporary registration sticker); United States v. Edgerton, 438 F.3d 1043 (10th Cir. 2006) (allowing an initial stop even though the only reason the temporary registration tag was unreadable was because it was dark out). If Mr. Hardy did not maintain a current registration sticker on his license plate—a reasonable inference given Mr. Hardy's belief that Utah's registration requirement is unlawful—, then any police officer noting the lack of a registration sticker would have reasonable suspicion to stop him.

Finally, Mr. Hardy argues that Officer McGaha violated the Fourth Amendment by impounding the car from Mr. Hardy's private driveway. Mr. Hardy cites Collins v. Virginia, a Supreme Court decision holding that a driveway is properly considered part of the curtilage of a home for Fourth Amendment purposes. 584 U.S. 586, 594 (2018). But Collins concerned a police officer who searched a motorcycle that was parked in a driveway even though the motorcycle's owner was not present and the officer was not conducting a traffic stop. Id. at 589–90. Here, Mr. Hardy does not dispute that Officer McGaha saw him driving on the road near his home. Curtilage is a concept that safeguards a person's right to be free from unreasonable searches and seizures, but it is not a protective force field that shields a person from the consequences of committing a traffic infraction in front of a police officer simply because the driver then reaches the safety of home. Officer McGaha's initial stop was based on reasonable

10

suspicion that Mr. Hardy was driving without registration, and Officer McGaha was permitted to stop Mr. Hardy even if that stop occurred directly outside Mr. Hardy's home or on his driveway. Upon confirming that Mr. Hardy did not possess valid registration, Officer McGaha properly impounded the car as required under Utah law.  While the distinction between a car parked on the street and a car parked in the driveway might be important in contexts where there is no evidence that the car had been driven without a proper license or registration, those are not the facts here.  The impoundment of Mr. Hardy's car was lawful regardless of where he parked his car.

For these reasons, the court finds that Mr. Hardy has failed to plead a violation of his Fourth Amendment rights.

### III.     Fourteenth Amendment

Mr. Hardy does not object to Judge Pead's finding that, under Utah's Motor Vehicle Act, the police need not provide a pre-deprivation hearing before impounding an unregistered car. (See ECF No. 28 at 9–10; ECF No. 29 at 1.)  Mr. Hardy instead argues that he never received notice of a post-deprivation hearing, and that he was therefore deprived of a meaningful way to challenge the impoundment of his car.  (ECF No. 29 at 1.)

The court is not persuaded by this objection.  First, the court notes that Mr. Hardy has not alleged that he requested but was denied a hearing with the Utah Driver License Division to determine whether his car was wrongfully impounded.  See Utah Admin. Code R708-50-4 (providing for such hearings).[4]  Instead, he merely asserts that he was not given notice that such a hearing was available.

---

[4] Instructions for appealing impound fees are also readily available on the website for Utah's Motor Vehicle Division.  See Impound Fees, Utah Motor Vehicle Division, available at: https://dmv.utah.gov/impounds/fees/ (last accessed Mar. 12, 2026).

11

When a police officer impounds a motor vehicle, Utah law requires that the officer make a report of the impoundment and send that report to the Motor Vehicle Division. Utah Code Ann. § 41-6a-1406(4)(b)(i). The Motor Vehicle Division must then send a notice of the impoundment that includes the reason for the impoundment and the conditions that must be satisfied before the vehicle may be released. Id. § 41-6a-1406(6)(b). That notice must be provided to 1) the registered owner; 2) any lien holder; and 3) a dealer, if the vehicle is operating under a temporary permit issued by the dealer. Id. § 41-6a-1406(6)(a).

Mr. Hardy has not alleged that he fits any of these categories. He is not a dealer or a lien holder of his own vehicle, and he states quite adamantly that he does not register his car with the state. He cannot complain about a lack of notice where he himself has canceled his status as the registered owner. Indeed, the Tenth Circuit has agreed that the failure to provide notice of a truck's impoundment and sale to someone who purposefully neglected to register that truck does not create a due process claim. See Jones v. Woodrow, No. 24-1313, 2025 WL 1078249, at *4 (10th Cir. Apr. 10, 2025). While that case concerned a Colorado law explicitly stating that the failure to register a vehicle was deemed a waiver of the owner's right to be notified of any impoundment or sale, the court finds the facts sufficiently analogous to be persuasive here. As the Tenth Circuit held, because Mr. Hardy "knowingly chose not to register his [vehicle], he [is] not entitled to the procedures that otherwise apply … when a properly registered vehicle is impounded." Id.

In any event, Mr. Hardy was fully aware that his car had been impounded. And he admitted that his car lacked valid registration. Additional notice of a hearing to challenge that impoundment would not have made a difference. After all, an impounded vehicle may only be released after the vehicle's owner "completes the registration, if needed, and pays the appropriate

fees[.]" Utah Code Ann. § 41-6a-1406(7)(a)(iii).  Mr. Hardy has not indicated that he intended or intends to comply with Utah's registration law.  Accordingly, he would have been unsuccessful at any hearing to challenge the impoundment or recover the impound fees.

But the court need not speculate about what would have happened at such a hearing.  Given that Utah allows any person to request a hearing challenging an impoundment and specifically sends notices of an impoundment to the registered owner of the impounded vehicle, the court finds Utah's laws and regulations constitutionally sound and holds that Mr. Hardy has failed to state a due process claim for a violation of the Fourteenth Amendment.

IV.     **Municipal Liability and Qualified Immunity**

Because Mr. Hardy fails to allege a violation of his constitutional rights, the court dismisses Mr. Hardy's claim alleging municipal liability and need not consider whether Officer McGaha is entitled to qualified immunity.

V.      **Leave to Amend**

Although Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend shall be given freely, the district court may deny leave to amend where amendment would be futile.  Jefferson Cnty. Sch. Dist. No. R-1 v. Moody's Investor's Servs., Inc., 175 F.3d 848, 859 (10th Cir. 1999) (citation omitted).  "A proposed amendment is futile if the complaint, as amended would be subject to dismissal." Id.

Here, Mr. Hardy has not requested leave to amend, and the court finds that such amendment would in any event be futile.  Mr. Hardy has admitted that Officer McGaha saw him driving and pulled him over on the basis of information about his lack of registration or license that was only a week old.  He has also admitted that his car was not, in fact, registered.  Given Mr. Hardy's insistence that he need not comply with state law, and the court's holding that the

state law in question does not violate Mr. Hardy's constitutional rights, the court finds that "it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend." Gee v. Pacheco, 627 F.3d 1178, 1195 (10th Cir. 2010) (cleaned up).

Although Judge Pead recommended that the court dismiss Mr. Hardy's action without prejudice, a dismissal is ordinarily entered with prejudice when the dismissal operates on the merits of the complaint. See Curley v. Perry, 246 F.3d 1278, 1282 (10th Cir. 2001); see also Brereton v. Bountiful City Corp., 434 F.3d 1213, 1219 (10th Cir. 2005) ("A dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile."). Accordingly, the court dismisses this action with prejudice.

## ORDER

For the foregoing reasons, the court ORDERS as follows:

1. The court ADOPTS Judge Pead's Report and Recommendation. (ECF No. 28.)

2. The court GRANTS the Defendants' Motion to Dismiss. (ECF No. 19.)

3. The court DENIES the Plaintiff's Motion to Reconsider the court's order denying the Plaintiff's Motion for Entry of Default. (ECF No. 30.)

4. The court TERMINATES AS MOOT the Plaintiff's Motion to Expedite the court's ruling on the Plaintiff's Motion to Reconsider. (ECF No. 35.)

5. The court DISMISSES this action with prejudice for failure to state a claim.

DATED this 12th day of March, 2026.

BY THE COURT:

_Tena Campbell_
Tena Campbell
United States District Judge

14